**UNITED STATES of America**

v.

**Jerrell BRESLIN, Morris Chucas, Louis Mayo, Jr., Leslie Mersky, and Steven Siomkin.**

**No. 96–CR–202.**

United States District Court,
E.D. Pennsylvania.

Nov. 26, 1996.

Thomas R. Perricone, Roberta Benjamin, Assistant U.S. Attorneys, Philadelphia, PA, for plaintiff.

William A. De Stefano, Robert E. Madden, Philadelphia, PA, for Breslin.

Thomas Colas Carroll, Philadelphia, PA, for Chucas.

Thomas A. Bergstrom, Malvern, PA, for Mayo.

Alan A. Turner, Philadelphia, PA, Alan E. Weinstein, Miami Beach, FL, for Mersky.

Steven A. Morley, Philadelphia, PA, for Siomkin.

## *MEMORANDUM*

RAYMOND J. BRODERICK, District Judge.

The Defendants in this case are the subjects of a forty count indictment filed on May 9, 1996 charging them each with one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 371, twenty-seven counts of wire fraud in violation of 18 U.S.C. § 1343, twelve counts of engaging in unlawful monetary transactions in violation of 18 U.S.C. § 1957, as well as aiding and abetting these offenses in violation of 18 U.S.C. § 2.

The Government filed a motion for a hearing concerning a potential conflict of interest with regard to the representation of Defendant Leslie Mersky by Alan Turner, Esq. The court held a hearing on October 30, 1996 and the Government and Mr. Turner have submitted extensive briefs on the conflict of

interest issue. For the reasons stated hereinafter, the court finds that there exists a serious potential for a conflict of interest concerning Mr. Turner's representation of Defendant Mersky in this case and, therefore, Mr. Turner shall withdraw as counsel to Defendant Mersky.

The indictment in subject-case alleges that from January 1990 through January 1992, the Defendants, operating through a company known as Turnbull & Sons Ltd. ("Turnbull"), engaged in a scheme to defraud individuals seeking business loans. The indictment alleges that the Defendants falsely represented to individuals seeking loans that they had the resources to assist them by providing full collateral in the form of letters of credit issued by major U.S. banks. The indictment alleges that the Defendants fraudulently collected advance fees from the individuals seeking loans, the Defendants never provided the promised collateral for any loans, and the Defendants did not return any advance fees which they collected on the basis of their fraudulent representations.

As heretofore pointed out, Alan Turner represents Defendant Mersky in subject-case. In 1991, Mr. Turner represented Morris Chucas in connection with a civil lawsuit filed in 1991 against Chucas by a company named N.V.R. Limited Partnership, *NVR v. Chucas*, No: 5622, Jan. Term 1991 (Court of Common Pleas of Phila. County). Chucas is a Defendant in the criminal proceedings before this court and is currently represented by Thomas Carroll, Esq. On October 17, 1996, Chucas entered a plea of guilty before this court to all counts in the indictment. In his guilty plea agreement, Chucas "agrees to testify as a witness before any grand jury, hearing, or trial when called upon to do so by the government." The Government has represented to the court that it intends to call Chucas as a government witness at trial.

The 1991 civil lawsuit in which Mr. Turner represented Chucas involved a transaction in which NVR sought the return of $7,500. from Chucas. NVR paid Chucas an advance fee of $7,500. in connection with Chucas' representations to NVR that Turnbull would assist NVR in obtaining a letter of credit in the amount of $7,5000,000. The court has reviewed the docket entries of *NVR v. Chucas* which show the following: On January 4, 1991 NVR filed its complaint against Chucas. On January 18, 1991, Mr. Turner entered his appearance on behalf of Chucas in the Court of Common Pleas of Philadelphia. An answer to NVR's complaint was filed on February 4, 1991. On April 10, 1991, Mr. Turner withdrew as counsel for Chucas and Chucas, at that time a member of the Pennsylvania bar, proceeded to represent himself *pro se* in the case.

Mr. Turner represented to the court during the October 30, 1996 hearing that his representation of Chucas in relation to the 1991 civil action was limited to preparing and filing an answer to NVR's complaint, and that he does not recall any confidential communications with Chucas other than the information which appears in the answer to NVR's complaint.

The Government represents that NVR is one of the victims of the Defendant's fraudulent scheme alleged in the indictment. As heretofore pointed out, the Government has represented to the court that Chucas will be a government witness at trial. Accordingly, Chucas will be subject to cross-examination by defense counsel Alan Turner. The conflict of interest arises in that Mr. Turner is prohibited by the attorney-client privilege from disclosing any confidential communication made to him by Chucas while Chucas was obtaining legal advice and assistance concerning the 1991 NVR civil case. As the Third Circuit has stated: "[T]he attorney-client privilege covers '[c]onfidential disclosures by a client to an attorney made in order to obtain legal assistance.'" *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 94 (3d Cir.1993). The attorney-client privilege belongs to Chucas, the client, and only he may waive it. *Id.* at 90.

During the course of the hearing on October 30, 1996, Thomas Carroll, Esq. represented to the court that Chucas was willing to waive the attorney-client privilege with respect to any confidential communication he may have made to Mr. Turner during the course of Mr. Turner's representation of him in the 1991 NVR civil case. Two days after

the hearing, however, the court received a letter from Mr. Carroll which stated:

> At the conflict of interest hearing on October 30, 1996, I communicated to the court the position of my client, Morris L. Chucas, that he would waive the attorney-client privilege with respect to his communications to his former attorney, Alan Turner. I also communicated Mr. Chucas' position that he consented pursuant to Rule 1.9 of the Rules of Professional Conduct for Mr. Turner to represent an adverse interest.
>
> Mr. Chucas contacted me a few minutes ago to advise that he has given further reflection on the subject. He has now decided that he does not wish to either waive the privilege or consent to representation of an adverse interest.

▆▆▆ In light of Chucas' representation that he will not waive his attorney-client privilege with respect to any confidential communications he made to Mr. Turner concerning the 1991 NVR civil case, this court finds that there exists a serious potential for a conflict of interest in that Mr. Turner is precluded from revealing any confidential communications made to him by his former client, Chucas, who is now a government witness. As the Third Circuit recognized in *United States v. Moscony:*

> Conflicts of interest arise whenever an attorney's loyalties are divided, and an attorney who cross-examines former clients inherently encounters divided loyalties.

927 F.2d 742, 750 (3d Cir.) (citations omitted), *cert. denied,* 501 U.S. 1211, 111 S.Ct. 2812, 115 L.Ed.2d 984 (1991). In view of the fact that Chucas has advised the court, through his attorney Mr. Carroll, that he does not intend to waive his attorney-client privilege, the court has not held a hearing for the purpose of determining whether Chucas intends to waive the attorney-client privilege, which only he can waive.

▆▆▆ In an effort to avoid being disqualified from representing Defendant Mersky, Mr. Turner contends in his supplemental brief that the "crime-fraud" exception to the attorney-client privilege "requires this Court to find that there is no valid attorney client privilege between Chucas and Turner." Mr. Turner points out that Chucas' answer to NVR's complaint denies that Chucas engaged in "bad faith" or an "effort to coerce" NVR. Mr. Turner further points out that Chucas entered a plea of guilty to the indictment in subject-case and, therefore, "it seems likely that Chucas will state at trial that he was guilty of fraud in connection with his dealings with N.V.R." Mr. Turner contends that the crime-fraud exception applies to his confidential communications with Chucas since Chucas "perpetrated a fraud upon the court in connection with his defense of the *N.V.R.* civil case" in that "Chucas lied to the Court of Common Pleas."

The United States Supreme Court has stated that "the purpose of the crime-fraud exception to the attorney-client privilege [is] to assure that the 'seal of secrecy' between lawyer and client does not extend to communications 'made for the purpose of getting advice for the commission of a fraud' or crime." *United States v. Zolin,* 491 U.S. 554, 563, 109 S.Ct. 2619, 2626, 105 L.Ed.2d 469 (1989) (citations omitted). Clearly, Chucas' communications to Mr. Turner in 1991 were made for the purpose of obtaining legal advice and assistance for defending against NVR's civil lawsuit, which alleged that Chucas engaged in "bad faith" or an "effort to coerce" NVR. Chucas' communications, therefore, were not made to Mr. Turner for the purpose of seeking advice on the commission of a future fraud or crime. Accordingly, the court finds that the crime-fraud exception does not apply to Chucas' confidential communications to Mr. Turner concerning the 1991 NVR civil case.

▆▆▆ Mr. Turner further contends that he should not be disqualified from representing Defendant Mersky in this case in light of the fact that Defendant Mersky has retained the services of another attorney, Alan Weinstein, Esq., to cross-examine Defendant Chucas. On September 24, 1996, the court admitted Mr. Weinstein *pro hac vice.* Mr. Turner represented to the court that Defendant Mersky retained the services of Mr. Weinstein for the purpose of advising him on the potential conflict of interest issue and to conduct the cross-examination of Chucas at trial.

The strategy of having Mr. Weinstein conduct the cross-examination of Chucas, however, does not diminish the court's finding that there exists a serious potential for a conflict of interest concerning Mr. Turner's representation of Defendant Mersky. As joint-counsel for Mersky, Mr. Turner and Mr. Weinstein must necessarily consult with each other and share information in order to effectively defend Mersky. This includes sharing information which may have been obtained by Mr. Turner during the course of his attorney-client relationship with Chucas.

Mr. Turner further contends that he should not be disqualified in light of the fact that Defendant Mersky has a right to proceed with the counsel of his choice and is willing to waive his right to proceed with conflict-free counsel. Mr. Turner states in his supplemental brief that his client, Defendant Mersky:

> [H]as been *independently* counseled on this potential conflict of interest by Weinstein; Mersky (as proffered to the Court in the record) is prepared to fully and completely make a knowing and intelligent waiver of any potential conflict of interest occasioned by the fact that his lead counsel Turner formerly represented Chucas, as described above. Mersky will personally place this waiver of record at the convenience of the Court, and has reached this decision to tender a waiver based upon the advice of independent counsel Weinstein.

Mr. Turner adds that he "has not disclosed any communication made to him by Chucas in connection with his brief representation of Chucas in early 1991 to any person...."

Although the United States Supreme Court has recognized that the Sixth Amendment affords "the right to select and be represented by one's preferred attorney," the Supreme Court has made clear that a defendant's right to be represented by his preferred attorney is not absolute and may be overcome by a finding of a conflict of interest or a serious potential for a conflict of interest. *Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988). In *Wheat,* the Supreme Court stated:

> The District Court must recognize a presumption in favor of petitioner's counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict.

*Id.* at 164, 108 S.Ct. at 1700.

Where there exists a conflict of interest or a serious potential for a conflict of interest, a defendant may seek to waive his right to proceed with a conflict free counsel in an effort to keep the counsel of his choice. The Supreme Court, however, recognized in *Wheat* that "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Id.* at 159, 108 S.Ct. at 1697. The Supreme Court concluded:

> [W]e think the district court must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses.

*Id.* at 163, 108 S.Ct. at 1699.

The court has carefully considered Mr. Turner's representation that Defendant Mersky is willing to waive his right to proceed with conflict-free counsel. In particular, the court has considered Mr. Turner's representation that he does not recall any confidential communications concerning Chucas' 1991 civil case other than the information which appears in the answer to NVR's complaint. This court, however, believes that permitting Mr. Turner to continue his representation of Defendant Mersky in subject-case would compromise this court's "institutional interest in protecting the truth seeking function of the proceedings over which it is presiding." *United States v. Voigt,* 89 F.3d 1050, 1079 (3d Cir.1996) (quoting *Moscony,* 927 F.2d at 749). For example, during the course of the trial Mr. Turner may recall a confidential communication made to him by Chucas which Mr. Turner determines should be revealed in order to effectively impeach the credibility of

Chucas. Clearly, this situation presents a conflict of interest which would seriously impede Mr. Turner's representation of Defendant Mersky and possibly jeopardize Mersky's right to a fair trial.

The Third Circuit has consistently upheld the decisions of the district courts disqualifying a defendant's counsel of choice where the district court determined that there existed a serious potential for a conflict of interest in that the defendant's counsel of choice would have to cross-examine a former client at trial. In *United States v. Moscony*, 927 F.2d 742 (3d Cir.), *cert. denied*, 501 U.S. 1211, 111 S.Ct. 2812, 115 L.Ed.2d 984 (1991), the Third Circuit upheld the district court's decision to disqualify the defendant's attorney of choice on the ground that the attorney would have to cross-examine his former clients, who were to testify as government witnesses at the defendant's trial. The attorney had represented the defendant and several of his co-workers, who were to testify as government witnesses, during the course of the grand jury investigation which lead to the defendant's indictment. The Third Circuit held:

> Thus, not only when an actual conflict is found, but when there is 'a showing of a serious potential for conflict,' the presumption in favor of a defendant's counsel of choice is overcome and the trial court may disqualify counsel and reject the defendant's waiver of conflict free representation.

*Id.* at 750 (quoting *Wheat*, 486 U.S. at 164, 108 S.Ct. at 1700).

More recently, the Third Circuit in *United States v. Voigt*, 89 F.3d 1050 (3d Cir.1996), upheld the district court's decision to disqualify defendant Voigt's attorney of choice on the ground that the attorney had represented Voigt and his three co-defendants during the course of the grand jury investigation which lead to their indictment. The district court found that there was as strong possibility that the three co-defendants would take the stand in their own defense at trial, thereby subjecting them to cross-examination by their former attorney. The Third Circuit held:

> Since there was a strong possibility that [a co-defendant] might face cross-examination

by a former attorney, there was a serious potential for a conflict of interest which, notwithstanding Voigt's attempt to downplay it on appeal, warranted disqualification.

*Id.* at 1078.

Accordingly, for the reasons stated herein, the court finds that there exists a serious potential for a conflict of interest concerning Alan Turner's representation of Defendant Leslie Mersky in subject-case and, therefore, Mr. Turner must withdraw as counsel for Defendant Mersky.

The court's finding that there exists a serious potential for a conflict of interest regarding Mr. Turner's representation of Defendant Mersky does not preclude Alan Weinstein, Esq., admitted *pro hac vice* on September 24, 1996, from continuing to represent Mersky in subject-case. As heretofore pointed out, Mr. Turner represented to the court that Defendant Mersky had retained the services of Mr. Weinstein to advise him concerning the potential conflict of interest issue and to conduct the cross-examination of Chucas at trial, which is scheduled to commence January 6, 1997. Moreover, Mr. Turner has represented that he has not disclosed to Mr. Weinstein any confidential communications made to him by Chucas. In the interests of justice, the court will order that trial in this matter be continued to February 10, 1997 for the purpose of providing Mr. Weinstein additional time to prepare for trial.

## ORDER

AND NOW, this 26th day of November, 1996; for the reasons stated in this court's memorandum of November 26, 1996;

IT IS ORDERED: Alan Turner, Esq. shall withdraw as counsel for Defendant Leslie Mersky in subject-case;

IT IS FURTHER ORDERED: in accordance with 18 U.S.C. § 3161(h)(8), the court finds that the ends of justice served by continuing this trial outweigh the best interests of the public and the Defendants in a speedy trial and, therefore, trial in this matter is

872

continued to *Monday, February 10, 1997 at 9:30 a.m.*